UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
                                    :
DORA SMITH, on behalf of herself    :
and others similarly situated,      :
                                    :
        Plaintiff,                  :    Civil Action No. 11-5510 (JAP)
                                    :
    v.                              :
                                    :    **OPINION**
LEGAL HELPERS DEBT RESOLUTION       :
LLC, et al.                         :
                                    :
        Defendants.                 :
_____ :

PISANO, District Judge.

This is putative class action brought by Dora Smith ("Plaintiff") against defendants Legal Helpers Debt Resolution LLC ("Legal Helpers") a/k/a Macey, Aleman Hyslip and Searns, and Global Client Solutions, LLC ("Global") (collectively "Defendants") that arises in connection with Plaintiff's engagement of Defendants for debt settlement services. Presently before the Court is Defendants' motion to compel arbitration. The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, Defendants' motion is granted.

**I.  FACTUAL BACKGROUND**

In March 2010, Plaintiff retained Legal Helpers (which, according to the agreement between the parties, is "also known as the law firm of Macey, Aleman, Hyslip & Searns") to "review [Plaintiff's] current unsecured debt burden and thereafter negotiate and attempt to enter into settlements with creditors of [Plaintiff] in an effort to modify and/or restructure [Plaintiff's] unsecured debt." Compl., Ex. 1 at 1. In connection with the engagement, the parties executed,

among other things, an Attorney Retainer Agreement (the "ARA") on March 17, 2010. According to the ARA, in consideration for Legal Helpers' services, Plaintiff agreed to pay an initial flat fee retainer, a monthly maintenance fee, and a contingency fee based upon the amount of debt reduction Legal Helpers would be able to achieve.  As relevant to the instant motion, the ARA contained the following provision:

> **XVII. Arbitration**:  In the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request.  The parties shall initially agree on a single arbitrator to resolve the dispute.  The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim.  The arbitration shall be conducted in either the county in which the Client resides, or the closest metropolitan county.  Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction.  The conduct of the arbitration shall be subject to the then current rules of the arbitration service.  The costs of arbitration, excluding legal fees, will be split equally or born by the losing party, as determined by the arbitrator.  The parties shall bear their own legal fees.

Compl., Ex. 1 at 4.

As part of her debt settlement program with Legal Helpers, Plaintiff established a special purpose bank account through Global "for the purpose of accumulating funds to repay [her] debts." *See* Special Purpose Account Application, attached as part of Ex. 1 to Certification of Rebecca Bratter ("Bratter Cert.").  Plaintiff began making monthly deposits of $807.09 into her special purpose account on April 19, 2010, from which various fees were deducted, and these deposits and deductions continued until January 2011.  *See* Account Activity Statement, attached as Ex. C to Bratter Cert.

The application for the special purpose bank account, signed by Plaintiff March 17, 2010, incorporates by reference an Account Agreement and Disclosure Statement ("AADS") with the following language:

> *I understand that the Special Purpose Account's features, terms conditions and rules are further described in an Account Agreement and Disclosure Statement that accompanies this Application (the "Agreement") . I acknowledge that I have received a copy of the Agreement; that I have read and understand it; that the Agreement is fully incorporated into this Application by reference; and that I am bound by all of its terms and conditions.*

*Id.* (emphasis in original). The AADS contains an arbitration provision as follows:

> **Arbitration and Application of Law**: In the event of a dispute or claim relating in any way to this Agreement or our services, you agree that such dispute shall be resolved by binding arbitration in Tulsa Oklahoma utilizing a qualified independent arbitrator of Global's choosing. The decision of the arbitrator will be final and subject to enforcement in a court of competent jurisdiction.

Account Agreement and Disclosure Statement, attached as part of Ex. 1 to Bratter Cert.

On August 2, 2011, Plaintiff commenced the instant lawsuit in the Superior Court of the State of New Jersey. Defendants subsequently removed the matter to this Court. Although the complaint in this matter contains five designated "counts," the Court can discern only three of the five that purport to contain any cause of action.[1] In Count II, Plaintiff alleges that Defendants failed to "comply with debt relief agency restrictions of the United States Bankruptcy Code" because Defendants allegedly provided bankruptcy advice to Plaintiff absent a timely retainer agreement. Count III alleges that Defendants engaged in deception and unconscionable business practices that violated New Jersey's Consumer Fraud Act, 56:8-1 *et seq*. Finally, Count IV alleges various violations of New Jersey's Debt Adjuster Act, N.J.S.A. 17:16G-1, *et seq*.

Based on the arbitration provisions in the agreements described above, all of the Defendants have moved to compel arbitration.

---

[1] Count I contains only a statement of facts, and Count V contains class action allegations.

### III.  ANALYSIS

A.  Legal Standard

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The goal of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  *Gay v. CreditInform*, 511 F.3d 369, 378 (3d Cir. 2007) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

There are two threshold questions that a court examines when addressing a motion to compel arbitration.  The Court must first determine whether the agreement to arbitrate is valid, and then decide whether the dispute falls within the agreement's scope.  *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007).  An agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation or any contract." 9 U.S.C. § 2.  The FAA requires a court to stay a proceeding in favor of arbitration "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3.  "[T]he [Federal Arbitration Act] establishes a strong federal policy in favor of the resolution of disputes through arbitration," and such agreements are presumptively enforceable.  *Brennan v. Cigna Corp.*, 282 Fed. Appx. 132, 135 (3d Cir. 2008).  *See also Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222 n. 25 (3d Cir. 1997). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

B. Discussion

Defendants assert that arbitration must be compelled in this case based upon the arbitration provisions in the ARA and AADS. Plaintiff does not deny she entered into these agreements but instead makes two arguments against enforcement of the provisions. First, Plaintiff argues that that the arbitration clauses are unenforceable because they lack specificity in that they do not contain express waivers of "the right to bring a suit in court on the statutory claims set forth in the complaint." Pl. Brf. at 8. Second, Plaintiff argues that "the contract containing the arbitration clause is itself illegal." Pl. Brf. at 9. Specifically, Plaintiff alleges that the "contract seeks to engage in activities" that violate New Jersey criminal laws relating to debt settlement activities. In making her arguments, Plaintiff essentially treats both arbitration clauses as one, or, at least, is making the exact same arguments as to each without distinction. Both arguments are without merit, and the Court finds the arbitration clauses to be valid and enforceable.

The Court turns first to Plaintiff's contention that the arbitration clauses in the ARA and the AADS are unenforceable because they do not contain an express waiver of a judicial forum and an express statement that the arbitration provision encompasses statutory claims. Defendants respond that the arbitration clauses are clear, conspicuous, and provide sufficient notice to consumers of what claims they encompass. Defendants further argue that Plaintiff's argument that the arbitration provisions are unenforceable has been rejected by *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S.Ct. 1740, 1746, 179 L. Ed. 2d 742 (2011). In *Concepcion*, the Supreme Court noted that under the FAA, arbitration agreements may be found to be unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *Concepcion*, 131 S.Ct. 1740, 1746 (2011). Agreements to arbitrate may "be

invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

However, as pointed out in a recent case in this district examining the same arbitration clauses at issue as in this case, *Concepcion* recognized that "states remain free to take steps addressing concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted." *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 2011 WL 6720936, *11 (D.N.J. Dec. 20, 2011) (quoting *Concepcion*, 116 S.Ct at 1750, n.6).  In *NAACP v. Foulke management Corp.*, 421 N.J. Super. 404, 428 (App. Div. 2011),  the court noted that even after *Concepcion*, as part of assessing "whether there was mutual assent to the arbitration provisions in the … contract documents," state courts "must examine whether the terms of the provisions were stated with sufficient clarity and consistency to be reasonably understood by the consumer who is being charged with waiving her right to litigate a dispute in court."

Here, as in *Guidotti*, the Court finds that the arbitration provisions at issue are sufficiently clear, unambiguously worded, and set off in their own paragraphs in the agreements with a bolded heading, such that the provisions were not hidden and would be reasonably understood by a party entering the agreement.  While the provisions do not, as Plaintiff points out, expressly state that Plaintiff agreed to waive a judicial forum, the provisions are clear that any "dispute" would be "submitted to binding arbitration" (ARA) or "resolved by binding arbitration" (AADS).  The Court finds such language to be sufficient.  *See Guidotti*, 2011 WL 6720936 at

6

*12 (finding similar language sufficient to support finding that plaintiff waived any right to try her dispute in a court of law).

Contrary to Plaintiff's arguments, the Court also does not finds the lack of express reference to statutory claims to be fatal to Defendants motion. In fact, recent New Jersey decisions have upheld arbitration provisions in the absence of such language. *See Kho v. Cambridge Management Group, LLC*, 2010 WL 4056858, *5 (N.J. Super. Ct. App. Div. 2010); *Epix Holding Corp. v. Marsh & McLennan Cos., Inc.*, 410 N.J. Super. 453, 476 (App. Div. 2009). Plaintiff relies upon *Garfinkel v. Morristown Obstetrics & Gynecology Associates*, 168 N.J. 124, 773 A.2d 665 (2001) (finding that because New Jersey's Law Against Discrimination expressly grants a plaintiff a right to a jury trial, to pass muster, "a waiver of rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination.") and *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 800 A.2d 872 (2002) (applying *Garfinkel*), for the proposition that the arbitration provisions at issue here are unenforceable because they do not expressly include statutory claims within their scope. These cases cited by Plaintiff, however, arise in the employment context, and New Jersey's Appellate Division has noted in distinguishing *Garfinkel* that "articulated limits to otherwise broadly-worded arbitration clauses do not apply outside 'the special area' of a 'plaintiff's enforcement of statutory employment claims.'" *Epix Holding Corp.*, 410 N.J. Super. at 476. The Appellate Division has also noted that only "if a statute or its legislative history evidences an intention to preclude alternate forms of dispute resolution, will arbitration be an unenforceable option." *Kho* 2010 WL 4056858 at *5 (quoting *Alamo Rent A Car, Inc., v. Galarza*, 306 N.J. Super. 384, 389, 703 A.2d 961 (App. Div.1997). Plaintiff points to no such intention here.

7

Finally, with respect to Plaintiff's argument that the subject matter of the ARA and the AADS is illegal, the Court notes that an attack on a contract as a whole does not present a question of arbitrability and, therefore, is one for the arbitrator, not the Court, to decide.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").  Similar to the instant case, the plaintiffs in *Buckeye* alleged that the contract as a whole was illegal and the Supreme Court explained that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract."  *Id.* at 446.  Consequently, the Court grants Defendants' motion to compel arbitration.

### III.  CONCLUSION

For the reasons above, Defendants' motion to compel arbitration is granted.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO  
United States District Judge

Dated:  June 11, 2012